Good morning. Beautiful day out there. Spring day. We have reversed a little bit of the schedule. We will take first Larson v. Correct Craft, number 2008-1208. Mr. Larson, whenever you're ready. Are you familiar with the lights? I am, Your Honor. Thank you. Good morning, Your Honor. Excuse me. May I please report? My name is Beecher Larson. I represent the plaintiff in this matter, Mr. Porter Larson. The patent ownership issues in this case are determined by the state law of Florida. The leading case is the case of State v. Born, decided by Judge Turell in 1942. In that case, Judge Turell wrote that when an employer undertakes to establish a claim... Counsel, you're getting right to the merits. Can we start with the subject matter jurisdiction problem? You received a copy of the case. I did, Your Honor. I know it was short notice, but we just caught it ourselves. Did you have a chance to look at it? I did, Your Honor. And do you have any thoughts on why this court and or any federal court would have subject matter jurisdiction over this case? This case was originally brought in state court in Orlando, in the Florida state court. We amended our complaint to allege improper inventorship. But you did not make a 256 claim in your amended complaint. Is that correct? What we did... The problem at the time is I was not licensed in the state court, in the federal court. And we were in a meeting with the judge, and my opposing counsel says, well, you really need to correct the inventorship on this. So I amended the complaint with their suggestion to correct the inventorship under declaratory judgment action, alleging Florida state declaratory judgment law. If you look at the complaint, that's what it says. They immediately removed the matter to Florida federal court. If you look at the notice of removal, it's not in my appendix. I should have put it in there. I didn't know this would be an issue. I would have put it in there. It's document number one that you can find, I'm sure, online. In there, my brother counsel alleged that this is a 256 action. The jurisdiction is in the federal court. With that allegation, it was removed. They also answered... Did you object to that allegation? I did not object, because they were right. But counsel, neither of you can weigh subject matter jurisdiction. So whether you both agree that you're willing to go forward in federal court is irrelevant, isn't it? I mean, whether we have jurisdiction or not, it's irrelevant. You can't weigh jurisdiction. You can't create it for us. Otherwise, boy, there'd be a long line out the door, right? Except for the... You know, I was reading this case this morning, the Jim Arnold case. And I was drawn to the case of FINA versus UIN. I believe I pronounced that properly. The site on that is 123 Fed 3rd, 1466. And a FINA oil versus UIN, a very similar matter, was brought up, where the defendant alleged a declaratory judgment action in Texas regarding improper inventorship. And the defendant removed it to federal court, just like what happened here. They never amended the complaint. The plaintiff in this case, Mr. Larson, at the time that he brought his complaint in state court, had no legal ownership rights to the patents, because he had assigned them. So how can he have standing? How can the court have jurisdiction until that assignment is set aside? There's two patents, Your Honor, that have never been assigned. You'll see those in the complaint. There's like, I think, six patents. Four of them were assigned. There's two of them that were never assigned. Part of this action is to determine the actual ownership of those patents that were never assigned. So he does have ownership, and those patents that were never assigned— But you just said that part of this action is to determine the ownership for those two patents that were never assigned. That still sounds like a state law ownership question. Well, I believe it is a state law ownership question, because there's two patents that were never assigned. Because Judge Arlington, what you just mentioned to me is that he's already assigned these away. He has no rights. He hasn't assigned them away. And the defendant is outlicensing out these patents that have never been assigned to them. They don't have the rights to them. Are those patents within or outside of the statute of limitations? They're within. They're within the statute of limitations. In fact, I believe all the patents that are in front of us today are within. What about the assignments that were made in 1998 and 1999? The patents of the ones in 1998 and 1999, those patents had been reissued, and the reissue patent is the only operable patent today. The reissue patents, I believe the operable date of that was April 26, 2000. We brought our case April 22, 2004, within the four years. The 350 patent and the design patent that were merged together in the reissue had been turned back into the Patent and Trademark Office. Those patents are no longer in existence. The only patent that's operable today is the reissue. And that was part of the original assignment? No, the reissue is probably the fourth assignment downstream. Was that separately assigned? Sure, every one. And it was not covered by the original assignment document then? No, sir. No, Your Honor. There was no implication of any reissuance or continuation part application that would be automatically assigned under that original assignment? I don't believe. I think they were saying things about continuation of parts in the assignments, but there was no indication that there was going to be a reissue. And I believe there's a substantial case law that each of these patents is its own chosen action. Each of these assignments stand alone. Each of the patents stand alone as its own chosen action. But doesn't state law, not federal law, typically govern issues of patent ownership? Absolutely, and that's why when I… So that's my following from that, if that is the case. How does this case arise under patent law if the ownership issue is a matter of state law? Because there's an allegation to correct inventorship, and it was removed in federal court under 256, and under the well-pleaded complaint rule, Infina v. Ewan, it's not the way that this complaint is written. It is the way the complaint could have been written. And I'm in Infina v. Ewan. I've already given you the site of that. And I'm on page, I believe it's 1470. And it says, under the well-pleaded complaint rule, we look to the corresponding action that Mr. Ewan would have brought, i.e., an action to correct inventorship under 256. So again, I'm asking this court to look at what action Mr. Larson could have brought. And if you look actually at the language of the complaint, and I had it out here. I was reviewing that before we spoke this morning. If you look at the language, he's alleging, I'm the sole inventor. We have inventor Mr. Todd, who invented nothing, but somehow is named as a co-inventor. And we have Mr. Snook, who is on this as an inventor. And he invented nothing. And consequently, I want to correct this and have their names removed. All the allegations in a 256 action are in that complaint. And under the rule of Feeney v. Ewan, this action for correction of inventorship, you look at the hypothetical action we could have brought. Now, all I had to do is add one paragraph and say, this is brought under 35 U.S.C. 256. I thought it wasn't necessary because they alleged it. And in fact, not only did they allege it, but in their answer, in their answer to this complaint, they're alleging federal jurisdiction. In their counterclaim, this is in the appendix of page 1. In their counterclaim, they're asking for a declaratory judgment under 28 U.S.C. 2201 for validity. They're asking for... But the counterclaim isn't going to confer jurisdiction. The counterclaim wouldn't confer jurisdiction on the federal court, correct? But as to the distinction between his claim for ownership rights versus his claim to correct inventorship, he is named as an inventor already on the patent. And that never changed, right? Who are we talking about here? Mr. Larson? Mr. Larson. Mr. Larson's name is the main inventor on all the patents. He, by his, however declaratory judgment, seeks an ownership determination. Just by rescinding the assignments based on fraud. And that makes a distinction between ownership and inventorship, does it not? Yes, it does, and both of them are brought forward in this complaint. We have allegations having to do with rescinding based on fraud, which has to do with the ownership claim. We also have allegations seeking correction of inventorship, which is a federal question under 256. And the inventorship claims have nothing to do with the fraud claims, right? Well, the inventorship claims actually are with the fraud claims because there was a bunch of trickery that went on to get these guys as co-inventors. Counsel, your client signed an affidavit swearing under oath that he was a co-inventor with these individuals. I understand now he'd like to take it back, but I don't know if you realize that inequitable conduct looms large in this case, even if you are successful in recovering the sole and exclusive rights to all of these patents. He signed an oath. He filed an oath with the PTO agreeing that these people were inventors. Whether they are or not, how does he not have unclean hands in light of that? The oath that he signed in the actual patent declaration says nothing about I signed under oath that these other guys are co-inventors. It doesn't say that. In fact, my brief goes specifically through that. You go look at the patent declaration. It does not say that I am attesting to everybody else's inventorship. It says I'm attesting to my own inventorship. The other affidavit that he signed, they lied to him. In fact, Mr. Todd, they said, we want you to be an inventor because it's going to strengthen the patent. It didn't strengthen the patent. The reason they wanted him to be an inventor, this is Mr. Todd, is Mr. Todd had gone out in the middle of the night and taken Mr. Larson's drawings and sent them out for patenting. But those are all factual issues that we certainly can't review at this point in time. It's for the trial court to do that. But the question still remains, is there Article III standing for Mr. Larson to bring the action in the federal court? Well, I believe there is. I mean, this is an action to correct inventorship. And even if you signed away the reps, I think the correct inventorship is mandated by the patent laws. The patents have to have the correct inventors or they're invalid. This patent has its standards invalid. But it's irrelevant to your client if he doesn't own them. It's irrelevant to him whether they're invalid. He has no standing. He has no interest. He has no stake in the patents unless you can succeed on the assignment issues. So I don't see how you argue he doesn't have standing. Let me give you a hint. You could have argued but didn't, reputational value. And when you go into state court after this, you might want to think about that as adding it as a claim. Could you distinguish for us the Jim Arnold case that you were given a copy of this morning from the posture of Mr. Larson's case? Well, I didn't have time to really master this except for the fact that they were trying to, the one federal action was one for patent infringement. And you can't go and sue for patent infringement unless you have ownership. Mr. Larson's not suing for patent infringement, which requires ownership. He's saying that these patents name me and two other people, and those two other people were never inventors. They were never there when I conceived my full and operative invention. They were just a pair of hired hands and can't even corroborate what they did. There's a big difference because Mr. Larson's not coming here saying that I have to be an owner to correct inventorship. And I don't know if I've read any law that says you need to be an owner to correct inventorship. In fact, I don't even think the FINA v. Ewing case, when they were trying to correct inventorship. You know, and I might be wrong if I didn't read that for that issue. But again, I believe it all comes back to the well-pleaded complaint rule. It's the action that Mr. Larson could have brought. And he could have brought an action to correct inventorship, especially when two of these patents have never been assigned. Mr. Larson, you're well on your rebuttal time. We'll restore some of it because there's a lot of questions. We'll give you four minutes to rebuttal. And you can add two minutes to Mr. Spears if he needs it. Thank you, Your Honor. Please support, I'm Doug Spears here on behalf of the correct craft. I'll go right to the jurisdictional issue. It's unusual that I find myself agreeing with Mr. Larson. But I do think that we have jurisdiction here because of the correcting inventorship issue. And I do think that Mr. Larson has an interest, even if it is, as you point out, Judge Moore, a reputational interest. That still has value. And I, like Mr. Larson, haven't researched this issue. It's new to us this morning. But that was never alleged in the complaint. A reputational infringement was never alleged. No, sir, it could have been alleged. It could have been alleged, but it was not. No, sir, it was not, but it could have been alleged. And if you look to the substance of what's claimed. Counsel, it's not up to us to make up the allegations that could have been alleged. Yes, ma'am. And so far that's all that's happened with regard to the reputational argument. Yes, ma'am. But you do look to the substance of the claim, not exactly what's printed in the complaint. And I think that that is a fair view of the allegations that this man has an interest in that determination. Explain to me factually about the two patents that are unassigned. So there are a total of six patents, but are we talking aboutó when we're talking about six, is it six including the reissues, so it's the originals and the reissues, or is it six discrete patents? It's six includingóit started out with the original patent, which did not include Mr. Todd's design issues. The reissue was the second one, the assignment in 1999, not later, as Mr. Larson said, which included then Mr. Todd's issues and made all three part of the reissue patent. Everything beyond that is a continuation in part of those original patents. They all relate back to the original. There is no separate and discrete patent that's ever been issued. They're all continuations of the original, and consequently those original assignments included all the continuations in part. What about the reissuance? Same thing. The reissuance was included in the original assignment? Yes, sir, because the reissue didn't change the original patent. It only included the additional design elements that Mr. Todd had added. Therefore, there's nothing additional Mr. Larson had to assign in that. Everything that he had had already been assigned, and those assignments are very broad and cover all successive patents that come thereafter. You've expressed your interest in having us assume jurisdiction. Yes, ma'am. And my question is, Mr. Larson is listed as an inventor. Yes, ma'am. He, by virtue of the assignments, is not an owner until those assignments are rescinded, which he claims should be done under Florida fraud law. What economic interest does he have in this case until that rescission takes place? Not having had a chance to analyze this, I have to concede that I don't see any. Based on the posture in which it was reviewed, however, again, looking at the substance and understanding he could have made a reputational claim, certainly it seems to me that a person who has invented a device that is very popular and widely used has an economic interest in being the sole inventor if that is in fact the case. If he doesn't have ownership rights, he can't license it, can he? He couldn't license that patent, but that would certainly be of significant value to him in marketing his design and inventive services. And I think that that's just like every business relies on the will and reputation. That wouldn't arise under patent law, though. No, ma'am, it would not. The damage, that value would not arise under the patent law. But that interest in being the sole inventor and thereby correcting inventorship, I think, would arise under the patent law. Counsel, did you all attempt to mediate this case? Yes, ma'am.  I think twice, in fact. Because I have to tell you, if I did reach the merits of the case, I see an awful lot of reversal here, an awful lot. I think that there were a lot of factual issues that were created by this record, and I'm never so blunt as to say this in open court, but an awful lot of factual issues that were created in this record, and I think that there was some obfuscation of a lot of it for the district court judge, so I don't blame the district court judge entirely for dropping the ball or missing it. I think it could have been better plushed out and briefed for him, but nonetheless, I see it there. I think that if you all get another shot at this, you really ought to try and mediate it. As I mentioned, Judge, we tried twice, and we tried fervently and flunked twice. We failed twice. Unfortunately, I don't think this is a case that will sell, even if this court, either on the jurisdictional issue or some other issue, sends it back. I think the case will ultimately be trying. That might be a mistake. I think there are some serious concerns about the validity and the enforceability of this patent long term, so if you all don't get together on it, it's going to be of no value to anyone, and you've got a lot more litigation costs ahead of you. I always preach that to clients. I judge more, and I'm afraid I haven't been able to sell that point here. How does the patent assignment issue, which is the part in the original set of claims, and in fact the only claims that were set out in the removed complaint, relate to correction of inventorship? They would relate only to the extent that they come as part of the reissued patent. The original assignment, there was no inventorship issue then with respect to Mr. Todd. However, Mr. Snook was included as a co-inventor in the original patent, the very first patent, and the assignment documents, and Mr. Snook is attacked as not being a co-inventor now. Is that a different interest than ownership interest? Yes, ma'am. Yes, ma'am, I think it is a different interest than ownership. It goes to whether or not the patent as issued is correct, and was properly issued. And so the complaint that was read was one that Mr. Larson had been fraudulently induced to give up his ownership interest flowing from his inventor status. The original complaint, yes, ma'am. The amended complaint that was removed, however, added the claim that the inventorship as registered, even in the initial patent, was incorrect and needed to be corrected to reflect him as the sole inventor. Seeking a declaratory judgment under state law. Yes, ma'am. Yes, ma'am. And what was the reason then for transfer to the federal court? Judge, I was not counsel at that time. That was predecessor counsel that removed it. They did remove it based on the theory, as I understand it, that a correction of inventorship, a judicial correction of the inventorship, obviously invoked the federal court's jurisdiction, and a state declaratory relief action would have, it could not jurisdictionally impact an existing patent to change the inventorship of that patent. That is a matter exclusively reserved to the federal courts. So that was the theory upon which they removed it. Was there ever any attempt to have the director correct the inventorship? No, sir. Before the Patent Office? I'm sorry? Before the Patent Office. No, sir, not that I'm aware of. There was never any petition filed by Mr. Larson to that effect, and no effort to that effect. This action has been his only action that was taken, of course, many years after the fact, after he was terminated from the record. I'm still a little concerned as to whether or not Article III jurisdiction does lie with us because of the standing issue as to whether or not there was an injury in fact that was pled or in existence without a challenge to the assignment and the ownership. So what were the damages if, in fact, only the inventorship was proven? Again, Judge, without the opportunity to brief it, I would go back to what I said before, and that is that there is no injury from the standpoint of licensing. He's already assigned it, and I think you're absolutely correct, that unless something happens without assignment, there is no injury until that occurs. It's just as the Arnold case points out. If it depends on some equitable determination prior to being able to make the patent claim, then I don't think standing or the jurisdiction lies. Nevertheless, I think there is a separate element of damage beyond an infringement-type claim or a licensing-type claim, and that is the reputational claim. To the extent that Mr. Larson has an interest, and it is an economic interest, in being the sole inventor on a widely used device like this, I think that he does have an interest in seeking correction of that inventorship under the federal statute, and I think that gives him standing. Just as a competitor would have standing to attack that patent or perhaps seek a correction of inventorship if that gave him a competitive advantage. But isn't that really a challenge to the assignment initially so that he can challenge the assignment as being the initial document that has to be eliminated before he gets to the issue of inventorship? Well, no, sir. At least in my view, I think the assignment goes to ownership. Ownership and inventorship, of course, are two different things. Two separate issues. Two separate issues. So I think that what Mr. Larson has done in his declaratory relief action is not address ownership. That's in the balance of the complaint. What he's addressed in his declaratory relief actions against the individuals, Snook and Todd, is to correct only that inventorship issue, which I think is a discrete interest that he does have standing to address. In the federal court, you said? Yes, sir. Yes, sir. Under the federal statute to correct that inventorship listed in the patent. So you think he could bring the suit even if there were no assignment issues? Suppose that he doesn't dispute that you all own it and the only thing he wants to bring is a 256 action so he can be held out as the only inventor even though he relinquishes all pecuniary interest in the patent to correct Kraft. You think that he'd still have a right to come into federal court with nothing else and assert the 256? Speaking in complete ignorance, not having been able to research that issue. It makes sense to me that yes, that that inventorship, that sole inventorship mantle does have value to him that would give him that standing to seek that correction. It makes sense to me that it would. Do I have any law to support that? No, ma'am, I don't. I may be able to find some, give an opportunity to brief it, but I do not have any standing there. Is the procedure before the PTO an alternative procedure or a previous administrative procedure which has to be exhausted before you can go to the federal district court? I don't know the answer to that, Judge. I don't practice before the PTO, so I don't know the answer to that. I have to, I'm going to do what you should never do and that is assume that my predecessor counsel who does practice before the PTO would have raised that if that was an issue and they would have sent it back to the administrative proceeding. I have to assume that it is not a condition preceded to this given the nature of the claims made. Are you familiar with our chow opinion? Yes, sir. It's another assignment and challenge to ownership and also inventorship that was not mentioned by other parties, so we won't get into that one right now. All right. So the only, let me just summarize, the only actual interest that you claim is cognizable by this court is Mr. Larson's interest in a sole, being denominated the sole inventor where he has been named as inventor and has no ownership interest. Yes, ma'am. As the case stands before you now, without the benefit of any other opportunity to look at this, I would say that that's the only one that I can identify. The standing cases require a concrete harm and they say the allegations can't be tenuous. We're on thin ice with the reputational value thing. But it is cold outside and getting thicker. Thank you, Your Honor. Thank you. Mr. Spears, Mr. Larson. Maybe because Mr. Spears and I have just seen this case today and this issue was raised for the first time today, I noticed in this case here you requested, or this court requested additional briefing on this issue. Perhaps you might want us to brief that. I'd leave that to your discretion. It seems that you all may have become mortal enemies at this point and settlement may be impossible in light of some deeply set feelings about the way that your client was treated, and I can appreciate that. But I really hope that you and your client and opposing counsel and his client will all hear me that even if you were successful on a reversal and even if you overcome what I see as a somewhat insurmountable subject matter jurisdiction problem, you're going to spend a lot of your time, and I realize that time may not be paid for at a high rate given your relationship with your client, but you're going to spend an awful lot of time continuing to litigate this, but probably in state courts starting over again, going all the way through to a trial. They're going to spend a lot of money doing it. You're going to eat up whatever value there is in the patent in attorneys' fees and expenses associated with this. And I'm not sure you have a valid or enforceable patent at the end of the day, even if you win. And even if we were to reach the merits of reversal and summary judgment, you then still have to go through a trial. Settle the case. Find a way. Find a common ground. You give them money. You accept the money. Settle the case. I have no power to make this happen. This is just my advice to you. And I've never, ever done this, by the way. I've only been on the bench two and a half years, but I've never, ever said to someone you need to settle this case. So please, for what it's worth, take it to your client and you do the same. Your Honor, we've tried to settle this case. In fact, my brother, Thompson, said we had two mediations. We actually had one mediation scheduled. They refused to go. We pled with them to go. They said, We're not going to mediate with you. The other mediation we had, they walked out at the end. I sat there. I go, Where are they? They're gone. I don't know how to settle this case.  Just some collateral issues, because I think we pretty much beat this issue to death. The substantive issues of the state law claims, I'm sure you're well aware of. We brought a 256 motion that you'll see. I think it's on page 126 in the appendix. So in addition to actually... This is in the form of a summary judgment motion. Exactly. But it's not a part of the pleading. It wouldn't give the court a basis for removal jurisdiction. Except when I look at Rule 256, and it says... It's very plain. It says, Bring the parties together. We brought Todd in. We brought Snook in. We have Larson in. We brought Crockraft in. And you give them a chance to say their piece. We did that. We brought a 256 action. The judge ruled on it. And under the Feena v. Ewing, I've said this two or three times. I'm repeating myself. But under the well-pleaded complaint rule, you know, it's not the way I wrote that complaint. It's what I could have... It's the allegation or the jurisdiction that I could have alleged. All the allegations are in there. Well, you could have alleged it, but you didn't allege it. But it was supposed to... You're supposed to understand what it means and what it does and otherwise. That's not the best way to practice law, though, is it? I mean, if it's there, let's spit it out, and let's put it on paper, and let's say that we have standing for these particular reasons, and the court has jurisdiction for these reasons, and so on. We still need to have some specificity in the complaint. Well, Your Honor, I believe there is specificity. If you take the complaint itself, and if you look at it... It's a declaratory judgment action. The equivalent of a 256 action brought in federal court. A declaratory judgment action brought under state law is equivalent of a 256 action brought in federal court. I think that's my claim. That's my point. And my opponent removed it in Document 1 in the federal court, is the notice of removal, and it says this is being removed under 35 U.S.C. 256. I understand that. I noted that. I didn't know at that time I was supposed to go... You immediately went to your amended complaint to find that, and didn't find it. Well, that amended complaint, though, was amended in the state courts. Right. It was amended in the state court. It was never amended again in the federal court, because I didn't think there was a need to, because everyone has agreed it's a 256 action. Until today, we've never had a problem that this wasn't properly before the court. Subject matter jurisdiction can be challenged at any time. Even the Supreme Court challenges subject matter jurisdiction when they get their cases, too, so it can be challenged and raised corresponding. Let me address just momentarily, just briefly, the economic interest. In the case... You have 85 seconds to go ahead. How many seconds? You have 85 seconds. Okay. I see 122, but I'll take... That's actually going up. That's going up. You're beyond your time. No, but go ahead. Why don't you just use up 85 seconds? So you're giving me another 85 seconds? Yes. Okay. This economic interest, we have two claims in there for breach of an implied in fact contract and breach of an implied in law contract. Both of those allege an economic interest. And both of those are state law claims. Yes, they are. And they would be determined in accordance with Florida state law. They would not arise under patent law. But we were talking about what the damages were. I understand that, but the damages is part of the contract claim, is it not? Yes, it is. Mr. Carson, thank you very much. The case is submitted.